R. C. PATTERSON v. W. E. HAWLEY ET AL.

[FILED NOVEMBER 18, 1891.]

1. **Vendor and Vendee:** ACTION FOR PURCHASE MONEY. One H. owned certain real estate which he sold to P. and H. for $20,000. P. was to have an undivided one-third part and H. two-thirds. P. gave his check to H. for $300, and afterwards gave another check for $1,700, which, with other obligations, completed his portion of the payment. H. contends that thereupon he agreed with P. to return the checks in question to him, provided he would reconvey one-half of his interest in the land, while P. contends that the checks were cashed by him, he paying $1,700 for them. In an action by H. against P. to recover the face value of the checks, *held*, that the action was not one to enforce a parol contract for the sale of real estate, but to recover the purchase money.

2. **The verdict** is sustained by the clear weight of evidence.

3. **Remarks of an attorney** *held* to be improper, but as the verdict is right it will not be set aside.

ERROR to the district court for Douglas county.   Tried below before CLARKSON, J.

*George W. Covell*, for plaintiff in error.

*H. B. Irwin, contra.*

MAXWELL, J.

This action was brought in the district court of Douglas county by the defendants in error against the plaintiff in error to recover the sum of $2,000, with interest from the 23d day of December, 1886, and costs.

On the trial of the cause the jury returned a verdict in favor of the defendants in error and against the plaintiff in error for the sum of $2,468, and a motion for a new trial having been overruled, judgment was entered on the verdict.

It is alleged, in substance, in the petition that on the 23d day of December, 1886, the plaintiffs below were the owners of the east half of the southeast quarter of the southeast quarter of section 9, town 14, range 13 east, in Douglas county, Nebraska, and that on that day the defendant below, R. C. Patterson, and one Jonas R. Harris purchased of them for $20,000 said tract of land.   Patterson contracted for the undivided one-third thereof and agreed to pay one-third of the purchase money, and Harris contracted for the undivided two-thirds thereof and agreed to pay two-thirds of the purchase money, of which $6,000 were to be paid in cash, $3,000 in notes of $1,000 each, due in one, two, and three years, and $11,000 of mortgage incumbrance on the land to Morris Morrison, to be assumed by the purchasers.   That to "bind the bargain" R. C. Patterson gave his check for $300 and J. R. Harris his check for $200 to the plaintiffs below; that on December 23, 1886, plaintiffs executed and delivered to Patterson and Harris a deed to said real estate, con-

veying to Patterson an undivided one-third part thereof
and Harris an undivided two-thirds thereof, and received
from Patterson on that day a check for the sum of $1,700
and from Harris on same day a check for $3,800 to com-
plete the cash payment of $6,000; that Patterson executed
and delivered to them their three notes of $1,000 each and
assumed the payment of the mortgage to Morris Morrison
of $11,000, completing the payments in full for said prop-
erty; that before the checks of $300 and $1,700, which had
been executed and delivered by Patterson to plaintiffs be-
low, had been presented to the bank for payment, to-wit,
on the 23d day of December, 1886, an oral agreement was
entered into between Patterson and the plaintiffs below that
in consideration of the unpaid checks being returned to
him, he, Patterson, would reconvey to the plaintiffs one-
half of his undivided one third interest in the said prop-
erty free from any and all incumbrances whatever; that
in pursuance of that agreement the plaintiffs returned to
Patterson on the 23d day of December, 1886, the said un-
paid checks, to-wit, one for $300 and one for $1,700, but
that he has not reconveyed, and still refuses to reconvey,
to the plaintiffs the one-half of his undivided one-third
interest in said property, although often requested so to do;
that he also refused, and still refuses, to return said unpaid
checks, to-wit, the one for $300 and one for $1,700, to
plaintiffs, though he has often been requested so to do.
Wherefore judgment is prayed for the amount of the
checks and interest.

A demurrer was interposed to the plaintiffs' petition,
which was overruled.

An answer was then filed by Patterson denying that on
December 23, 1886, or at any other time, an agreement
was entered into between him and plaintiffs that in con-
sideration of the checks mentioned in the petition, to-wit,
the check of $300 and the check of $1,700, being re-
turned to him by plaintiffs he would reconvey to plaint-

iffs one-half of his undivided interest in said property mentioned in petition free from any and all incumbrances whatever, and denying that he agreed to convey or reconvey to plaintiffs any interest in said property mentioned in petition. He further denies that said plaintiffs returned said checks, to-wit, the one for $300 and the one for $1,700, to him in pursuance of the alleged agreement set forth in petition. He then alleges that all the negotiations had, and all the business done by him in regard to the purchase of the real estate mentioned in petition by him and Harris, was had and done by him with William E. Hawley only, and that none was had or done by him with Archer and Sobotker, or with either of them; that he was not informed and did not know, until at or about the time the deed of the real estate executed by plaintiffs to him and Harris was delivered, that Archer and Sobotker had any interest in said real estate, and he did not then, nor at the time the two checks, one of $300 and the other of $1,700, were delivered by Hawley to him, know but that whatever interest in said real estate was held by Archer and Sobotker was held by them for the benefit of William E. Hawley, the bargain for the purchase of said property being wholly made with William E. Hawley.

He further alleges that when the said checks mentioned in petition, to-wit, one of $300 and one of $1,700, were executed by him, he delivered them to William E. Hawley; that the $300 check was made payable to the order of William E. Hawley, and the $1,700 was made payable, at the request of William E. Hawley, to the order of one. Morris Morrison; that after the deed conveying said real estate to him and Harris had been delivered by William E. Hawley, and said checks had been delivered by him to said Hawley, he, Hawley, soon thereafter came to him, having the two checks in his possession, and the indorsement of Morris Morrison on the $1,700 check, and asked him to cash them; that he at first refused to cash them,

whereupon Hawley offered and agreed with him that if he would then give him, Hawley, $1,700 in cash, he, Hawley, would accept that sum in payment of both checks, and would transfer and surrender said checks to him; that he did then and there pay to said Hawley $1,700 in cash, and said Hawley accepted the same, and then and there, in consideration thereof, in pursuance of said agreement, transferred and delivered said checks to him and accepted said sum of $1,700 in full payment of said checks.

Plaintiffs replied by general denial.

The plaintiff in error contends that the gravamen of the action is the breach of a parol contract for the sale and conveyance of real estate, and therefore the contract cannot be enforced. It is evident, however, that the plaintiff in error is mistaken. If the allegations of the petition are true, the plaintiff in error received the consideration for certain real estate which he had agreed orally to convey to the defendants in error, but after having received such consideration he retained the same and refused to perform the contract. This he cannot do. He must convey the land or return the consideration.

The plaintiff in error contends that he cashed the checks in question and he accounts for his possession of them in that way. His explanation is not very satisfactory, and in any event was testimony to be submitted to the jury. In our view the evidence fully warrants the verdict.

This being an action to recover the money paid for the land, it is not material whether the plaintiff in error knew of the interest of Archer and Sobotker in the contract or not.

In his opening address to the jury the attorney for the defendants in error cast some reflections upon the plaintiff in error. Objections were promptly made and the court required the attorney to avoid personal remarks. We do not care to copy the language used and thus make a permanent record of what was said in the heat of argument.

Cases are to be tried upon the merits. When the character of a party is not in issue in a case no reference should be made to it. The question is not whether he is a good or bad man, but what are his rights in that case, and the court should see to it that the trial is confined to questions before the court. All appeals to the jury upon matters outside of the case tend to defeat the due administration of justice, and any statement of an alleged fact outside of the evidence prejudicial to one of the parties, may be sufficient to cause a reversal of the judgment. A court of justice does not condemn unheard, nor upon *ex parte* statements of opposing counsel, and it will not permit one of its officers to abuse his position by such unauthorized statements. We are satisfied, however, that the verdict in this case is the only one that the jury should have returned under the evidence and the error will be disregarded. The judgment is right and is

AFFIRMED.

THE other judges concur.