LOVE v. KIRKBRIDE DRILLING & OIL CO.

No. 1782.   Opinion Filed January 7, 1913.

Rehearing Denied June 20, 1913.

(129 Pac. 858.)

1. CONTRACTS—Contract for Benefit of Another—Enforcement by Beneficiary. A contract, made expressly for the benefit of a third person, may be enforced by such person at any time before the parties thereto rescind it. Comp. Laws 1909, sec. 1044.

2. SAME—Transfer of Corporation—Benefit of Third Party. K., the president and general manager of the Kirkbride Drilling & Oil Company, entered into a verbal agreement with L., a stockholder in said company, who was also the manager and assistant treasurer of the Sachem Oil Company, whereby the beneficial interest of said first-named company and of K., theretofore claiming to be the owner of said interest in his own right, was transferred to the Sachem Oil Company, in consideration of a sum certain, to be paid by said last-named company into the

treasury of the first-named company, and which amount was so paid, but subsequently appropriated by L. and J., owners of one-half of the stock of the Kirkbride Drilling & Oil Company, claiming ownership thereof. Held, that the agreement so made and entered into constituted a valid contract, supported by a good consideration, and that an action would lie to recover the purchase price by the first-named company.

3. **FRAUDS, STATUTE OF—Executed Contract.** The defense of the statute of frauds cannot be interposed against an executed contract.

4. **SAME—Oil Leases—Transfer—Executed Contract.** Where a parol contract for the sale of certain oil leases, unenforceable because within the statute of frauds, is executed, and the contract of sale fully performed by proper transfer of said leases, and nothing remains to be done except pay over the purchase price, the statute may not be invoked as a means of defeating a recovery. In such cases the rights of the parties are no longer affected by the statute.

5. **APPEAL AND ERROR—Review—Reversal—Variance.** Though there be a variance between the allegations of a petition and the facts proved on the trial, yet, if it be a case where an amendment of the petition ought to be allowed to conform it to the facts proved, the judgment will not be reversed on account of such variance.

6. **SAME—Judgment—Evidence.** A judgment will not be reversed by this court on account of the insufficiency of the evidence, where the evidence reasonably tends to support the same.

(Syllabus by Sharp, C.)

*Error from Superior Court, Muskogee County;*
*Farrar L. McCain, Judge.*

Action by the Kirkbride Drilling & Oil Company against B. L. Love. Judgment for plaintiff, and defendant brings error. Affirmed.

*Hutchings & German,* for plaintiff in error.
*Samuel V. O'Hare* and *B. B. Wheeler,* for defendant in error.

Opinion by SHARP, C. This case presents error from the superior court of Muskogee county, where at the trial plaintiff recovered judgment against defendant in the sum of $2,050. It is urged that the alleged contract entered into between T. E.

Kirkbride and defendant Love, being for the benefit of the plaintiff corporation, cannot be enforced because the Kirkbride Drilling & Oil Company, defendant in error, was not a party to the contract, and that T. E. Kirkbride was under no obligation to ·it, and that the alleged contract, not being in writing, under the statute of frauds was null and void, and for these reasons defendant's demurrer · to plaintiff's petition should have been sustained. Counsel for plaintiff in error cite in support of their contention *Vrooman v. Turner,* 69 N. Y. 280, 25 Am. Rep. 195, *Lorillard v. Clyde et al.,* 122 N. Y. 498, 25 N. E. 917, 10 L. R. A. 113, *Baxter v. Camp,* 71 Conn. 245, 41 Atl. 803, 42 L. R. ·A. 514, 71 Am. St. Rep. 169, *German State Bank v. Northwestern Water & Light Co.,* 104 Iowa, 717, 74 N. W. 685, 9 Cyc. 380, and cases cited therein, as being decisive of the first above mentioned objection.

When a contract, made for the benefit of a third person, may be enforced by. him, is a question that has ofttimes been before the courts, and many of the authorities are collected in the notes to *Baxter v. Camp, supra,* and in *Jefferson et al. v. Asch,* 25 L. R. A. 257, and *Tweeddale v. Tweeddale,* 61 L. R. A. 509, as well as in Anson on Contracts (American Ed.) sec. 284, and Wald's Pollock on Contracts, p. 237 *et seq.* With us it is provided by statute that a contract made expressly for the benefit of a third person may be enforced by such person at any time before the parties thereto rescind it. Comp. Laws 1909, sec. 1044; *Eastman Land & Investment Co. v. Long Bell Lbr.. Co.,* 30 Okla. 555, 120 Pac. 276; *Staver Carriage Co. v. Jones,* 32 Okla. 713, 123 Pac. 148.

That there was a contract between Kirkbride and Love, made for the express benefit of the Kirkbride Drilling & Oil Company, is, we think, supported by the evidence, and that the contracting parties, being stockholders and officers in the company, had authority to make such a contract for the company's benefit cannot be seriously controverted. Neither is the important fact, the necessity of a sufficient consideration, wanting.

T. E. Kirkbride was the president and general manager of the Kirkbride Drilling & Oil Company. B. L. Love was the owner of one-fourth of the stock in said company, and, besides, was assistant treasurer and manager of the Sachem Oil Company. The Sachem Oil Company was the owner, the Kirkbride Drilling & Oil Company the drillers, of oil well on the Julia Friday allotment. The leases taken by Carr Peterson for T. E. Kirkbride were located near this well. It was contended by Kirkbride that the leases obtained by Peterson belonged individually to said Kirkbride; while, on the other hand, it was contended by Love that the leases were for the benefit of the Kirkbride Company, and not for T. E. Kirkbride, in his individual right. The Sachem Oil Company wanted those leases, though it appears that said company, together with the Coody Oil Company and the Mid-West Oil Company, had taken other leases in that vicinity. In order to settle all differences, it was finally agreed that the Sachem Oil Company should have a one-fourth interest in the leases, taken by Peterson, for the consideration of $6 per acre, upon the understanding, however, that the proceeds of the sale of the leases should be paid into the treasury of the Kirkbride Company. In procuring this adjustment, Love, while interested in both the Kirkbride Drilling & Oil Company and the Sachem Oil Company, represented the latter. As a result of the contract both T. E. Kirkbride and the Kirkbride Company (whichever in fact was the owner of said lease) surrendered and gave up their interest in 400 acres of leased land, acquired by Peterson, while the Sachem Oil Company by proper assignment received the title to 300 acres thereof, and through a subsequent arrangement made by Love, McFaddin and Anderson received title to the remaining 100 acres. Aside from a question of pleading, it is a question of little importance whether these leases in fact were held by T. E. Kirkbride in his own right or for the Kirkbride Company. If individually, by the terms of the agreement the proceeds of the sale were to be placed to the credit of the Kirkbride Company, while, if

the leases in fact belonged to the Kirkbride Company, the proceeds of the sale thereof would as a matter of course belong to said company.  True, it was contended by the plaintiff in error that, as a result of the controversy between the parties, the leases were divided, Kirkbride taking one-half interest and Love and Johnson one-fourth interest each, and that the sale to the Sachem Oil Company and McFaddin & Anderson, being for Love and Johnson's interest, they of right were entitled to the proceeds of the sale to the Sachem Oil Company.  However, the fact that payment by the Sachem Oil Company was made by draft and voucher drawn in favor of the Kirkbride Oil & Drilling Company, and that at the time Love was manager of the former company, was conversant with the transaction, in fact, had actively participated in bringing it about, furnishes strong support to the claim that the funds derived from the sale of the leases were to be paid into the treasury of the drilling company for its use and benefit, and not to be paid out or appropriated by Love and Johnson.  In other words, the drilling company became the sole beneficiary of the executed contract, and there can be no question of its right to maintain an action for the recovery of the money wrongfully diverted by two of its stockholders.  We have read with care the authorities cited by counsel for plaintiff in error, and find nothing therein in conflict with the foregoing conclusion.

Was the contract within the statute of frauds?  Comp. Laws 1909, sec. 1089, provides that an agreement for the leasing for a longer period than one year, or for the sale of real property, or an interest therein, is void unless the same or some note or memorandum thereof be made in writing, and subscribed by the party to be charged or his agent.  The leases taken by Peterson were in writing, as were the assignments thereof.  Payment of the purchase price by both the Sachem Oil Company and McFaddin & Anderson was made to the Kirkbride Company, and the proceeds appropriated by Love and Johnson under claim of ownership.  The action is not one to enforce the terms of an executory contract concerning an in-

terest in real property, but it is brought to recover a specific sum of money belonging to plaintiff, the sale price of certain oil leases. As individuals, Love and Johnson have not accounted for, but, on the contrary, held the moneys received by them, which according to plaintiff's contention was to be paid to the Kirkbride Company, and not to Love and Johnson individually. Were it true that the contract was unenforceable by reason of the statute of frauds, it having been performed, the rights of the parties are no longer affected by the statute. This court in construing section 3371, Mansf. Dig. of Ark., in force in the Indian Territory prior to statehood, and which is similar in its provisions to the Oklahoma statute above referred to, in *Kuhn v. Poole,* 27 Okla. 534, 112 Pac. 962, said:

"Plaintiff executed the contract. Defendant has at no time tried to revoke the contract, but has joined his building to the party wall, and is using same. Had plaintiff in error refused to carry out this contract, it could not have been enforced. However, as a parol executory agreement, it falls within the statute of frauds; but defendant cannot receive and accept the benefits of the contract fully performed by plaintiff and escape payment thereof"

—citing *Stuht v. Sweesy,* 48 Neb. 767, 67 N. W. 748; *Rice et al. v. Roberts,* 24 Wis. 461, 1 Am. Rep. 195.

In *Atchison, T. & S. F. Ry. Co. v. English,* 38 Kan. 110, 16 Pac. 82, referring to the statute of that state, the court said:

"The defendant further says that plaintiff cannot recover upon a verbal contract for the sale of lands. This was not a contract within the statute of frauds. It was not a contract for the sale of lands—it was the sale itself. The contract was perfected by giving the deed. This action is for damages sustained by plaintiff because the defendant refused to give him his pass for life over its road. The pass was promised to be given as the price of the land deeded. There is no provision of our statute which precludes a recovery for the price of lands actually conveyed, even though the agreement concerning the price be oral. Reed on Frauds, sec. 658; *Hodges v. Green,* 28 Vt. 358; *Bowen v. Bell,* 20 Johns. [N. Y.] 338 [11 Am. Dec. 286]; *Wilkinson v. Scott,* 17 Mass. 249; *Holland v. Hoyt,* 14

Mich. 238; *Tripp v. Bishop,* 56 Pa. 424; *Tuthill v. Roberts,* 22 Hun, 304."

In *Bibb v. Allen et al.,* 149 U. S. 481, 13 Sup. Ct. 950, 37 L. Ed. 819, it is said in the syllabus: "The defense of the statute of frauds cannot be set up against an executed contract." See, also, *Moore v. Chicago, R. I. & P. Ry. Co.,* 7 Kan. App. 242, 53 Pac. 775; *Doherty v. Doe,* 18 Colo. 456, 33 Pac. 165; *McLure v. Keen,* 25 Colo. 285, 53 Pac. 1058; *Horr v. Hollis,* 20 Wash. 424, 55 Pac. 565; *McClintock v. Thweatt,* 71 Ark. 326, 73 S. W. 1093; 20 Cyc. 302.

Regardless of the fact that a contract is within the statute of frauds, the general rule may be said to be that after a sale of land, made pursuant to a parol contract, where the same has been fully executed, and nothing remains to be done except to pay over the purchase price, the statute may not be invoked as a means of defeating a recovery.

In *Holland v. Hoyt,* 14 Mich. 238, the Supreme Court, speaking through Campbell, J., said:

"The objections arising out of the statute of frauds require more attention. The entire transaction prior to the deeds was verbal, and, of course, if no deeds had been made, could not have been the ground of relief at law or in equity. But, when a verbal contract is performed by the conveyance of land on the one part, there can be no difficulty in compelling the equivalent from the other contracting party. A court of equity can decree specific performance, if that is needed, and a court of law can allow a recovery of the purchase money, if that is all that is sought. *Thomas v. Dickinson,* 12 N. Y. 364."

See, also *Linscott v. McIntire,* 15 Me. 201, 33 Am. Dec. 602; *Pierce v. Weymouth,* 45 Me. 481; *Maddox v. Rowe,* 23 Ga. 431, 68 Am. Dec. 535; *Gangwer v. Fry,* 17 Pa. 491, 55 Am. Dec. 578; *Freed v. Richey,* 115 Pa. 361, 8 Atl. 626; *Parrill v. McKinley,* 9 Grat. 1, 58 Am. Dec. 212; *Stone v. Dennison,* 13 Pick. (Mass.) 1, 23 Am. Dec. 654; *Swanzey v. Moore,* 22 Ill. 63, 74 Am. Dec. 134; *McCue v. Smith,* 9 Minn. 252 (Gil. 237), 86 Am. Dec. 100; *Patterson v. Hawley et al.,* 33 Neb. 440,

50 N. W. 324; *Huff v. Hall,* 56 Mich. 456, 23 N. W. 88; *Ascutney Bank et al. v. Ormsby,* 28 Vt. 721.

It is urged with much ability that there was a total failure of proof at the trial, and for that reason the judgment should be reversed, upon the authority of *Mulhall v. Mulhall,* 3 Okla. 304, 41· Pac. 109, and *Pringey et al. v. Guss,* 16 Okla. 82, 86 Pac. 292, 8 Ann. Cas. 412, and other cases cited in the brief of counsel. Sections 5673, 5674, 5675, and 5679, Comp. Laws 1909, are identical with the provisions of the statute before the court, and by it construed in *Mulhall v. Mulhall, supra.* The decision is one which reviews at length the Kansas decisions construing the Kansas statute, from which our statute was borrowed. Among other things, the court said:

"The language of this section 135 of the Code of Procedure (Comp. Laws 1909, sec. 6575) does not say that allegations of the pleadings must be proved or else there is a failure of proof, but it is that the allegations of the claim or defense to which the proof is directed must be supported by the evidence. It matters not how informal or inaccurate the pleadings may be, if they pray the judgment which is rendered, and, if the proof supports the claim or defense to which it is directed, then there is no fatal variance."

In *Pringey et al v. Guss, supra,* the plaintiffs in error sought to introduce a carbon copy of the contracts, without any showing of diligence to procure the originals or one of them. The trial court excluded the carbon copy, the only proof of the contract upon which the plaintiff below relied. A demurrer to the evidence was sustained, and on appeal the case was affirmed, the court holding that without proving the contract the plaintiffs could not recover, and that they could not use an unsigned carbon copy without first showing diligence in attempting to procure the original. The case is not in point here.

But, on the other hand, the rule announced in *Mulhall v. Mulhall, supra,* is, we think, the correct rule. There was not a failure within the purview of section 5675, *supra.* Any variance that there may have been was immaterial. It is not contended that the plaintiff in error was mislead by such variance.

The controversy between the parties, growing out of the sale and transfer of the leases, was fully inquired into. No objection was offered that the testimony submitted was not within the issues. *Grandstaff et ux. v. Brown et al.,* 23 Kan. 176. The judgment rendered was according to the prayer of plaintiff's petition, and we have been unable, from a careful study of the entire record, to see wherein the rights of the plaintiff in error were in any wise prejudiced by the action of the trial court. When it is remembered that in *Mulhall v. Mulhall, supra,* the action was one for money loaned, while the special findings of the court showed that instead of being loaned, the money was invested in a partnership venture, during which the defendant agreed to take the plaintiff's interest in the cattle and repay him his original investment, and that the case was held to be one in which the pleadings could have been amended to correspond to the proof, we do not feel that the judgment of the court should for that reason be disturbed, though the question was raised upon a demurrer to the evidence. Where there is a variance between the allegations of the petition and the facts proved on the trial, yet, if it be a case where an amendment of the petition ought to be allowed to conform it to the facts proved, the judgment will not be reversed on account of such variance. *Missouri Valley Ry. Co. v. Caldwell,* 8 Kan. 244; *Mitchell v. Milhoan,* 11 Kan. 617; *Hummer v. Lamphear,* 32 Kan. 439, 4 Pac. 865, 49 Am. Rep. 491. In such case, though no formal amendment was made, it will be considered as made by this court. *Pape v. Capitol Bank,* 20 Kan. 440, 27 Am. Rep. 183; *Tipton v. Warner,* 47 Kan. 606, 28 Pac. 712; *Loper v. State,* 48 Kan. 540, 29 Pac. 687.

The third ground urged, upon which the judgment should be reversed, is that the verdict was contrary, not only to the decided weight of the evidence, but was not supported by any evidence entitled to the least credit. This court will not investigate the record to see whether or not the verdict of the jury is contrary to the weight of the evidence, or examine into the evidence to ascertain its credibility, the rule being that, where

the evidence is conflicting, this court will not review it to ascertain where the weight of evidence lies; but, if there is evidence reasonably tending to support the verdict, it will not be set aside. *Loeb v. Loeb et al.,* 24 Okla. 384, 103 Pac. 570; *Bird v. Webber,* 23 Okla. 583, 101 Pac. 1052; *Burns v. Vaught,* 27 Okla. 711, 113 Pac. 906; *Great Western Mfg. Co. v. Davidson Mill & Elevator Co.,* 26 Okla. 626, 110 Pac. 1096; *First National Bank of Guymon v. Arnold,* 28 Okla. 49, 113 Pac. 719.

We are therefore of the opinion that the judgment of the trial court should be affirmed.

By the Court: It is so ordered.